LOVE *v.* HUMPHREYS COUNTY.

(In Banc.  Feb. 10, 1941.)

[200 So. 245.  No. 34519.]

366

· Creekmore & Creekmore and C. E. Inman, all of Jackson, for appellant.

V. B. Montgomery, of Belzoni, for appellee.

**Griffith, J.,** delivered the opinion of the court.

Chapter 142, Laws 1934, authorizes the issuance of county refunding bonds, and among its provisions is that "the resolution or order providing for the issuance of such bonds may reserve unto the board of supervisors the right to call in, pay and redeem such bonds, in the inverse order of their . . . maturities, prior to the maturity date or dates thereof and on any interest payment date. Provided, however, that whenever it is desired to exercise the aforesaid right, if reserved in such resolution or order, the board of supervisors shall cause written notice thereof to be delivered to the bank or office at which such bonds are payable, and such notice shall be so delivered not less than thirty (30) days prior to the interest payment date designated for the redemption of such bonds, [and] after date so designated no further interest shall accrue on the bonds so called for redemption." Section 2.

The Chapter further provides that before proceeding to issue the refunding bonds, the board of supervisors shall publish notice of their intention to do so, and if as many as twenty per cent. of the qualified electors file written protest against the bond issue, then an election on the question must be held and the bonds cannot be issued unless a majority of the participating qualified electors shall vote therefor.

Acting under the Chapter, the Board of Supervisors of Humphreys County entered an order at its regular April, 1934, Term reciting its intention to issue the refunding bonds of the county in the sum of $2,184,100, and that the right to call in and pay the bonds in the inverse order of their maturities, prior to their maturities, would be reserved, and that the written notice of the exercise of the reserved right would be given to the National City Bank in the City of New York, at which bank the bonds would be payable.

The notice in all respects as required by the statute was published in a newspaper of the county during four weekly issues of the paper beginning on April 12, 1934, the said published notice containing the entire aforesaid order. of the board in haec verba, and containing as a consequence the provisions for the call and payment of the bonds prior to maturity, and as to the notice to be given at the bank where the bonds were payable as has been stated.

No protest was filed, and at its regular May, 1934 Term, and on the 7th day of May, 1934, the Board entered its final order for the issuance of the bonds, the said final order containing and repeating the provisions already mentioned, reserving the right to call in and pay the bonds prior to maturity and the provisions for the service of notice on the National City Bank. And thereupon immediate steps were taken to validate the bonds by a decree of the chancery court as provided by Chap. 10, sec. 312 et seq., Code 1930, and every step prescribed for the validation was taken, and no objections having been made by any taxpayer, the bonds were validated by a final decree of the chancery court made and entered on the 4th day of June, 1934. And every bond which has at any time been sold or exchanged under the proceedings aforesaid, as lithographed, signed and delivered, contained the express recital that the bond had been issued pursuant to and in accordance with the order of the Board of Supervisors of Humphreys County made and entered on May 7, 1934, and recorded in Minute Book 7, p. 156, of the said Board; and we have already stated the contents of that order so far as material to the present questions.

After some of the bonds had been sold or exchanged for prior bonds, a bond attorney residing outside the state wrote to a party in Humphreys County, interested in these bonds, that the order of May 7, 1934, should be amended so as to make that order read ''without option of prior payment,'' and without consulting its own attorney, the Board, at its regular August 1934 Term, and

on the 6th day of August 1934, attempted to amend its order of May 7, 1934, so as to make it read as next hereinabove recited, and this is what has brought about the present trouble.

The bonds issued in 1934 were 4% bonds. They have been paid down to the extent that on the next interest date April 1, 1941, only a balance of $1,103,000 in principal will remain due. In this situation the Board has found that it can now call in and pay off the entire balance of the 1934 issue by a new issue at 3½ per cent. It has therefore taken the proper steps under Chap. 143, Laws 1934, to do this, all the necessary and proper orders to that end having been made and entered at the November, 1940 Term of the Board; but when the hearing on the validation of the new issue came on before the chancellor appellant as a taxpayer and the holder of some of the bonds under the 1934 issue appeared and objected on three grounds:

(1) That by reason of the amendatory order dated August 6, 1934, the bonds of that issue are non-callable;

(2) That the power to refund bonds under Sec. 4, Chap. 143, Laws 1934, is exercisable only when there are no funds available in the ordinary management of the fiscal affairs of the county, and

(3) That the court has no jurisdiction over the bondholders of the 1934 issue, and therefore can make no order affecting their rights or interest.

The argument of appellant on the first ground is that in the issuance of bonds the Board acts in a legislative capacity, so long as it proceeds within the pertinent statutes, and that after the adjournment of the term at which its so-called final order is entered, and even after the decree of validation, the board may make amendatory orders, especially in mere matters of detail.

When there has been no validation by the chancery court of a bond issue, every question which may go to the validity of the bonds remains open to the taxpayer to raise in an appropriate suit by him at any time when

he may be called upon to contribute to the payment of the bonds, and his attack may question every step taken in the issuance from the original order on through the intermediate orders to and including the final order and any amendatory order. But when there has been a validation decree that decree forecloses every question which could have been raised by any taxpayer against the legality of the issue; wherefore it follows that when the Board presents to the taxpayers a certified record for validation and gives them notice to come into court if they have any objection to what the record shows and proposes, that record must remain unchanged in all particulars which otherwise would operate adversely to the interest of the taxpayers, else the validation proceeding would become a means of entrapment by which the taxpayers would be lead to forego objections which they might successfully have urged against the validation, and then by a subsequent amendatory order suffer an increase in the burden or be deprived of some advantage as compared with the validated record.

The Board cannot present one record to the taxpayers for the validation of bonds and then present to them a more burdensome or less advantageous record when they are called on to pay, and since the rights of bondholders are based on what the Board has validly done, the bondholders cannot insist on any record which, as against the taxpayers, the Board had no right to make. The so-called amendatory order of August 6, 1934, because of its disadvantageous purpose, was of no valid effect, and the bonds of 1934 stand as if that order had never been made.

We are not certain that we have precisely interpreted the second contention of appellant, but we believe we have stated it broadly enough to cover anything that has been urged under that point. And however the contention may be stated it argues in a circle or else involves a construction of the statutes which would unduly narrow their meaning and effect, and we pursue the point no further than to say that it is not maintainable.

As to the third contention: Validation proceedings are solely between the county as a governmental entity and the taxpayers of the county—between the authority issuing the bonds and those who are to pay them. Those who hold the bonds or other obligations which are to. be paid or refunded are not necessary parties, or even proper parties—there are no statutory provisions by which they may be made parties, and the validation of bonds is wholly a statutory proceeding. It is true that in a proceeding to validate refunding .bonds, a taxpayer may appear and object that there are no bonds to be refunded, or that none will be due or can be made to be due at the time the refunding bonds will be sold, and that upon such objection the court will be obliged to decide that issue; but it is still an issue solely between the Board and the taxpayers, and if the questions involved be decided in favor.of the bonds proposed to be issued and the bonds are validated, the bonds as validated become of unquestionable legality as between the county, the taxpayers, and the purchasers of the refunding bonds.

The validation proceedings for refunding bonds do not include or preclude the holders of the older bonds which are proposed to be refunded. They have not been parties to the refunding validation proceedings. and should they elect not to surrender their bonds, but to hold them and seek to collect the interest thereon, and should sue therefor, they would be met with no more than what confronts litigants generally, that is to say, the obstacle of stare decisis, but not with any such defenses as res adjudicata or the law of the case.

The decree validating the refunding bond issue now before us was in all things correct, and the bonds in the hands of purchasers or takers will be beyond question as to their legality.

Affirmed.